(December 31, 1904.)

# KENDRICK STATE BANK v. NORTHERN PACIFIC RAILWAY COMPANY.

[79 Pac. 457.]

APPEAL—REVIEW—CONFLICTING EVIDENCE.

1. Where there is a substantial conflict in the oral evidence, the verdict of the jury and the judgment of the trial court will not be reversed.

(Syllabus by the court.)

APPEAL from the District Court of Latah County. Honorable Edgar C. Steele, Judge.

Action in claim and delivery.   Judgment for the plaintiff. Affirmed.

The facts are stated in the opinion.

I. N. Smith, for Appellant.

Plaintiff's Exhibit "A"—"Received of H. A. Russell, 600 bx. App. in store, dollars, O. M. Cleveland"—is not a warehouse receipt.   Porter's name is not attached—it is not in the form prescribed by Session Laws of Idaho of 1899, pages 7, 8, nor is it in any manner such a document as would be admissible on a criminal prosecution against Porter under those sections. The words therein, "in store," add nothing to its significance, as it was issued without authority, and Russell knew it at the time he got it.   The usual storage receipt that was required by the statutes was not given at the time they were delivered there, for the reason, as Mr. Russell was informed, that the party having charge of the warehouse had no authority to issue what are called warehouse receipts, etc.   Both Porter and Cleveland say Cleveland had no authority to issue warehouse receipts.   (*People's Bank v. Gayley*, 92 Pa. St. 518; *Cathcart v. Snow*, 64 Iowa, 584, 21 N. W. 94 (construing "stored") ; *Sinsheimer v. Whitely*, 111 Cal. 378, 52 Am. St. Rep. 192, 43 Pac. 1109; *Geilfuss v. Corrigan*, 95 Wis. 651, 60 Am. St. Rep. 147, 70 N. W. 306, 37 L. R. A. 166; *State v. Bryant*, 63 Md. 66; *Union Savings Assn.*

*v. St. Louis Grain Exchange Co.,* 81 Mo. 341.) Plaintiff came into court to procure provisional remedies of claim and delivery, on an affidavit which was not true. This was iniquitous conduct relating directly to the suit, and involving the matters in controversy. That such action prevents plaintiff from obtaining any relief and stops the granting of any relief to him is settled in Revised Statutes of Idaho, 4020; Pomeroy's Equity Jurisprudence, secs. 397, 404. The next question to consider is, the title of Kendrick State Bank to the property in controversy. The title of the bank rested on the "receipt"—heretofore shown to be void. It therefore had nothing, and the motion for nonsuit was proper. The bank could take no greater rights under the "receipt" than Russell had. Russell had no receipt—if he obtained it as he said, it was void, as having been obtained surreptitiously from an unauthorized agent; if he obtained it as Cleveland said, it was void, as being a mere memorandum and not a receipt of any nature. (*Franklin Nat. Bank v. Whitehead,* 149 Ind. 560, 63 Am. St. Rep. 302, 49 N. E. 592, 39 L. R. A. 725; *Gueilfuss v. Corrigan,* 95 Wis. 65, 60 Am. St. Rep. 143, 70 N. W. 506, 37 L. R. A. 166.)

Forney & Moore, George W. Coutts and G. W. Suppiger, for Respondent bank, cite no authorities.

John M. Bunn and Ellis T. White, for Northern Pacific Railway Company, Respondent, cite no authorities.

SULLIVAN, C. J.—This action is one in claim and delivery and was brought in the probate court of Latah county, the Kendrick State Bank being the plaintiff and the Northern Pacific Railway Company the defendant, to recover the possession of four hundred and thirty-seven boxes of apples of the alleged value of $437. On application to the court, L. A. Porter, the appellant here, was permitted to intervene.

The pleadings are somewhat lengthy, and it is sufficient to say that the real question in issue was as to the ownership of said four hundred and thirty-seven boxes of apples. The cause was tried in the probate court and the judgment was in favor of the bank. The cause was appealed to the district court, and tried there by the court with a jury, and the verdict and judg-

ment was in favor of the bank against the intervener appellant. The appellant by his plea in intervention claimed to be the owner of the fruit in controversy, and that he shipped the same by the Northern Pacific railroad from himself at Kendrick, Idaho, to himself at St. Paul, Minnesota, on the eleventh day of November, 1904. He alleges that he shipped four hundred and ninety-one boxes of fruit, more or less, at the value of $500; that said fruit was en route, and that he had a bill of lading issued by said railroad company, and while the fruit was so en route, and without the exercise of *vis major,* or any event giving cause therefor, the respondent bank and the railroad company, wrongfully and without right, set out said car of fruit and unlawfully stopped the same and removed four hundred and twenty boxes thereof from the car, and converted the residue to their own use; that the bank instituted this action and omitted to join the intervener in its affidavit, and that the bank falsely stated in its affidavit of claim and delivery that the cause of detention of said fruit was unknown; whereas it knew the cause thereof and that the bond on claim and delivery was void as being justified to before the attorney for plaintiff. To that complaint in intervention the railroad company filed an answer denying the material allegations. The bank answered the complaint in intervention, denying the material allegations thereof and averred that it was the owner of said fruit. This appeal is from the judgment and order denying a new trial. It will be seen, therefore, that this action is one in claim and delivery with an intervener setting up rights to the property.

The first question to be determined is the ownership of the apples in controversy. If the appellant was the owner of them, then the judgment must be reversed, but if he is not, the judgment must be affirmed.

It appears from the evidence that a settlement was made, or attempted, between Porter and one Russell on the fifth day of November, and Russell testified as follows: "I had a conversation with him [Porter] on that day prior to the time the train left, about the apples in controversy; that was a proposition to sell to him. I said I would take eighty cents a box for them, and he said he would give me seventy-five cents, and I did not

sell them to him for seventy-five cents." He also testified that after Mr. Porter had left Kendrick on the 5th of November, that he received the following receipt from O. M. Cleveland, who had charge of the warehouse operated by Porter in which the apples were stored, to wit: "Received of H. A. Russell, 600 bx. app. in store. Dollars. O. M. Cleveland." Russell testified that on the evening of the 5th, after receiving that receipt, he sold the apples to the bank, and that he acted for the bank and ordered the apples loaded for shipment; that he hired a man to expedite the loading of the same; that later he discovered that some pears had been placed in the car, and he thereupon notified the agent of the railroad company not to ship the apples, and he was informed by that agent that the car had already been billed out. Thereupon he informed said Cleveland that he had sold the apples to the respondent bank and the agent thereupon tore up the bill of lading that he had issued to appellant. On that point Mr. Porter testified as follows: "A bill of lading was issued to me for that car of apples in controversy prior to the 11th of November, 1901, and the agent tore it up. He tore it up after Russell had told him the apples belonged to the bank."

Mr. Cleveland, on behalf of the appellant, testified as follows (on being shown said receipt): "I recollect the circumstances on which I signed this; this is my signature and I call this a memorandum receipt; I signed this about half-past 11 or 12 o'clock, November 5, 1901. I then gave it to Mr. Russell as soon as I signed it. Mr. Russell and Mr. Porter were doing business until pretty near 11 o'clock the same morning. Both Mr. Russell and Mr. Porter went down town, and Mr. Russell came back, and this was just shortly before he went to dinner. I issued this receipt because Russell came and asked for a statement of what he had in; he wanted to know if I would give him something to show for the apples he had in. I says: 'I will give you something to show.' .... The conversation between him [Russell] and Mr. Porter I heard lasted from about 9 to 11, and this business transaction between them was at that time; I heard the conversation they had about the apples; stating it the best I can, I say, the first I heard, I

heard Porter say: 'I will give you seventy-five cents a box for the apples.' I then went over and listened to the conversation all the way through, and Mr. Russell says: 'I think I should get eighty cents. I want the cash; I want you to buy them outright now.' Porter says: 'No, Russell, I can't do it; seventy-five cents is all they are worth,' and they went on talking about it a few minutes the same way, and at last Porter says: 'I will give you a guaranty of seventy-five cents a box, and part of anything I get over eighty-five cents. I want ten cents a box for commission for handling the apples.' "

The witness further testified shortly after 10 o'clock on that day that he met Russell, and Russell said: "Cleveland, I think I will accept that offer of Porter—that is, he says, seventy-five cents a box, and part of all he gets, over eighty cents a box; and I am to get a part of everything over eighty-five cents." The witness further testified that Russell instructed him to get the apples out just as soon as he could and that he started to repack and load the apples on November 5th, and completed the loading about 7 o'clock P. M., November 9th. Mr. Porter testified as follows: "I say I bought these apples from him [Russell] on November 5th, and further that Russell wanted eighty to ninety cents per box for the apples then. So on the 5th I finally agreed to give him seventy-five cents a box for everything but the Jeffries, absolute, and then I told him all I could realize above eighty-five cents I would divide with him, divide between us and he said he would let me know later. That related to these apples in controversy."

The appellant, Porter, further testified as follows: "My daybook shows I gave Russell credit on the 11th (November) for those apples. I presume this entry was made after my conversation with Jacobs and Suppiger."

It appears from the record that the appellant and said Jacobs, who was president of the bank, and Suppiger, who was its attorney had a conversation with the appellant in regard to the settlement of this matter, and it appears from the above testimony that it was after such conversation was had that Porter gave Russell credit for the apples.

The witness Russell was recalled and testified, among other things, as follows: "The conversation I had with Porter on November 5th about selling these apples in controversy was, I told him under the circumstances I was willing to take eighty cents a box for these apples, in order to square up my account with the bank, and he offered me seventy-five cents for the apples; I didn't accept his proposition; when Cleveland gave me the receipt (being the one above set forth), this warehouse receipt, I called for the receipt in the evening, after Mr. Porter had gone, and we failed to make a settlement and I told him [Cleveland] I wanted it for the purpose of turning it over to the bank. I had sold the apples and wanted to cover my overdrafts. I asked him for the receipt and he gave it to me. I didn't have any conversation with Cleveland about noon the 5th of November, 1901, in which I told him I had accepted Porter's proposition of seventy-five cents a box for the apples. Mr. Porter being there at the time, I was in consultation with Porter himself, and I went to dinner with him at noon. I never at any time told Mr. Cleveland that I had accepted Porter's offer of seventy-five cents a box for the apples."

The above quotations from the evidence are sufficient to show that there was a substantial conflict therein as to the ownership of said apples. That being true, this court is not disposed to disturb the judgment of the trial court on the ground that the evidence is not sufficient to support it.

It appears from the record that prior to November 11th, the railroad company issued a bill of lading for said car of apples to the appellant, Porter, and thereafter destroyed said bill when Russell informed the agent that the apples belonged to the bank, and it appears that on the eleventh day of November, at the request of Porter, and without the consent of the bank, the railroad company issued a second bill of lading and proceeded to remove the car of apples from the state. It also appears that Porter told Jacobs, the president of the bank, and also the bank's attorney, on the morning of the 11th of November, that he would not ship the apples, and, under that state of facts, the affiant might truthfully say in his affidavit in claim

and delivery that he did not know the cause of detention of the apples by defendant, the railroad company.

It is contended that the receipt above set forth signed by Cleveland is not a warehouse receipt; that Porter's name is not attached to it and that it is not in the form prescribed by Session Laws of 1899, pages 7 and 8. That contention is admitted by counsel for respondent. But, however, it is a receipt showing that Porter had stored, for Russell, six hundred boxes of apples, and, as Porter had not purchased the apples from Russell, all the claim that he would have against the apples would be for warehouse or storage fees, and such fees as he would be entitled to for handling the fruit, and the record shows that he was tendered by the bank the amount due him for that service, and we think, from the entire record, that that was all the interest that Porter had in the apples. The bank having purchased the apples from Porter, it was entitled to the possession of them upon tendering or paying to Porter the amount of such charges.

Having arrived at the conclusion that the bank became the owner of the apples by purchase from Russell, it is unnecessary for us to pass upon the many other errors assigned in regard to certain instructions and the admission and rejection of testimony.

The judgment must be affirmed, and it is so ordered, with costs in favor of the respondent.

Stockslager, J., and Ailshie, J., concur.